■ FOREST LABORATORIES, INC., Appellant, v HANS LOWEY, Respondent. — In an action, *inter alia,* for an assignment of defendant Lowey's patent No. 4,259,314, injunctive relief and damages for breach of contract, plaintiff appeals from stated portions of a judgment of the Supreme Court, Westchester County (Buell, J.), dated November 30, 1982, which, among other things, dismissed the first, second and fourth causes of action of plaintiff's complaint insofar as it was directed at compelling Lowey to assign his patent and sought to enjoin Lowey from using or commercially exploiting certain of its pharmaceutical product formulations disclosed in this patent.

Judgment affirmed, insofar as appealed from, with costs.

Defendant Lowey had been founder, president, chairman of the board, chief executive officer, and, after resigning from his other positions, consultant for plaintiff Forest Laboratories, Inc. (Forest). During his employment with Forest he was granted several patents relating to time-release pharmaceutical processes. In particular, in 1975, Lowey and Robert Stafford were granted a patent on a sustained-release base and the process for making that base known as the "Synchron" process, which was assigned by them to Forest. Also during Lowey's employment with Forest, the parties entered into an agreement in which, *inter alia,* Lowey agreed to assign to Forest all trade secrets and patents developed by him during the "term of the Employment Agreement". Following Lowey's resignation as chairman of the board on January 31, 1977, the parties signed what is referred to as a consulting agreement, paragraph 5 of which is set forth below: "5. Lowey confirms that all inventions, discoveries, and patents and patent applications and improvements and modifications thereof heretofore made or obtained by Lowey are, and under prior agreements between Lowey and Forest have been,

the sole and exclusive property of Forest * * * Lowey confirms that all information, inventions, data, designs, discoveries, improvements and modifications obtained by Lowey and all patents and patent applications ('Forest Technology') made or obtained by Lowey or in his name *during the term of the Employment Agreement,* are the sole and exclusive property of Forest. Lowey further agrees, upon the request of Forest or its nominee at any time hereafter, to execute and deliver more formal assignments of the Forest Technology or any part thereof, and to assist Forest or its nominee (entirely at its or their expense) to obtain for the benefit of Forest or its nominee, patents covering all or any part of the Forest Technology in any or all countries, *but the Forest Technology is acknowledged to be and remain the property of Forest, whether patented or not.* Lowey warrants and represents that he had made no assignment, transfer or disposition of, and has not entered into any agreement with respect to Forest Technology. Lowey further agrees that all information, inventions, data, designs, discoveries, improvements and modifications made during the term hereof shall be deemed to be part of the Forest Technology and shall be the sole and exclusive property of Forest" (emphasis added).

Paragraph 6 of the consulting agreement sets forth Lowey's obligation with respect to Forest's trade secrets and confidential information: "6. Lowey recognizes that Forest has developed and is continuing to develop *formulae, designs, business plans, processes, devices and materials pertaining to its research and the production and marketing of its products which are secret and confidential in character and are of great and unique value to Forest* and which are now or may be used in its business (hereinafter referred to as 'Secret Information'). It is acknowledged (1) that Lowey may have participated in the development of all or part of such Secret Information, (2) that all or part of such Secret Information may have been disclosed to Lowey in connection with his prior employment by Forest, and (3) that Secret Information may be disclosed to him in connection with the performance of his duties as a consultant hereunder. It is therefore acknowledged and agreed that such disclosure has been and will be made to Lowey with the understanding and on the condition that all such Secret Information, whether or not Lowey participated in its development or was otherwise received by Lowey, will be kept and maintaned [sic] by Lowey as confidential and in complete secrecy. Lowey agrees that he will not dislose [sic] at any time, in writing or otherwise, in any manner, directly or indirectly, to any person, persons or party, except

such as shall be designated in writing by the President of Forest, any of such Secret Information" (emphasis added).

On June 15, 1979, more than a year after Lowey's termination as a consultant on June 8, 1978, the parties executed a third agreement (settlement agreement). It confirmed that the obligations and provisions set forth in paragraphs 5 and 6 of the consulting agreement remained in full force and effect. In addition, clause (b) of paragraph 5 of the settlement agreement contained a noncompetition provision as follows: "Lowey acknowledges that it is not inappropriate, that he agree not to compete with Forest for the term and to the extent set forth herein. Accordingly, Lowey agrees that for a period beginning on the date hereof and terminating at 12:00 midnight on June 8, 1981, he will not directly or indirectly either as an employee, officer, director, stockholder owning shares in any amount in a corporation whose shares are not publicly traded and a stockholder owning more than 1% of the outstanding common stock of a corporation whose shares are publicly traded, partner, joint venturer, consultant, or otherwise engage in and perform services for or have a financial interest in any business which directly or indirectly sells or distributes or offers to sell or distribute 'controlled release' or 'sustained action' pharmaceutical products to certain persons, firms or corporations who, on or prior to June 9, 1978, were (1) customers of Forest or (2) had been engaged in discussions with Forest with a view to becoming customers of Forest".

On December 10, 1979, Lowey filed a patent application for a new sustained-released pharmaceutical process referred to as the "Simetry" process or the new Lowey patent, which was granted on March 31, 1981. That patent, patent No. 4,259,314, is the subject of this action.

Forest thereafter commenced the instant action against Lowey alleging, *inter alia,* that Lowey violated and continues to violate paragraphs 5 and 6 of the consulting agreement by (1) disclosing part of Forest's "sustained-relief" technology; and (2) disclosing trade secrets. (First and second causes of action in Forest's second amended complaint.) In addition, Forest claimed Lowey violated clause (b) of paragraph 5 of the settlement agreement and his obligations as a former director, officer and employee of Forest by disclosing trade secrets and other confidential information.

Following a lengthy trial, Special Term permanently enjoined Lowey from using or exploiting the buccal nitroglycerin formulation set forth as example 1 in the subject patent. In its decision, Special Term made extensive fact findings, concluding

that Lowey violated his common-law duty toward Forest in misappropriating Forest's buccal nitroglycerin formulation (example 1). However, Forest's remaining causes of action were dismissed, with prejudice. On appeal, Forest argues that it is entitled to a judicially compelled assignment of the Lowey patent because, *inter alia,* it was discovered during the term of Lowey's employment with Forest and utilized four elements of Forest's Synchron technology. According to Forest, pursuant to the various agreements between the parties, the Lowey patent belongs to Forest, and, in addition, Lowey should be enjoined from using or exploiting examples 2 to 15. Based on the record and our interpretation of the agreements between the parties, however, we find that Forest failed to prove that Lowey's new patent was made during "the term of the Employment Agreement". Nor did it prove, "by clear and convincing evidence" that all of the elements within Lowey's Simetry process are found in a single structure or description in Forest's Synchron process "where they do substantially the same work in substantially the same way" (*Escoa Fintube Corp. v Tranter, Inc.,* 631 F2d 682, 692). In addition, we find that Special Term properly dismissed Forest's cause of action as to examples 2 to 15, concluding, based on the record, that only example 1 was misappropriated by Lowey. Special Term's conclusions both as to the patent and the examples were reached under a fair interpretation of the evidence and should not be disturbed (*Matter of Poggemeyer,* 87 AD2d 822, 823). Titone, J. P., Gibbons, Brown and Niehoff, JJ., concur.